1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| 9  DEBORAH I. CAUFFMAN, | NO.  C10-281-JCC-JPD |
| 10                            Plaintiff, | |
| 11       v. | REPORT AND |
| 12  MICHAEL J. ASTRUE, Commissioner of | RECOMMENDATION |
| 13  Social Security, | |
| 14                            Defendant. | |
| 15 | |

16        Plaintiff Deborah I. Cauffman appeals the final decision of the Commissioner of the

17  Social Security Administration ("Commissioner") which denied her application for

18  Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

19  §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

20  forth below, the Court recommends that the Commissioner's decision be REVERSED and

21  REMANDED for the award of benefits.

22                          I.        FACTS AND PROCEDURAL HISTORY

23        Plaintiff was a 37-year-old woman at the time of her administrative hearing in 2009.

24  Administrative Record ("AR") at 422.  She has a high school education, but since the first

25  grade was enrolled in special education classes for every subject.  AR at 213, 424-25.  Her past

26

REPORT AND RECOMMENDATION - 1

work experience includes employment for two weeks as a prep cook at Jack in the Box in 1997, and two weeks as a recycling sorter in 1999.  AR at 165, 426-30.

Plaintiff lives with her spouse of fifteen years, Heather, and their 14-year-old son, Jacob.  AR at 425, 432, 439.  Prior to Heather's gender transformation surgery in 2003, Heather's name was Chad.  AR at 425.  Plaintiff currently receives welfare benefits.  AR at 423.

On June 6, 2005, plaintiff filed an application for SSI disability benefits.  AR at 13, 22, 23.  Plaintiff asserts that she is disabled due to borderline intellectual functioning and a learning disorder.  AR at 73-83.  Although her original alleged onset date was July 1, 1997, plaintiff amended the alleged onset date to September 26, 2003.  AR at 420-21.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 45-51.  Plaintiff requested a hearing, which took place on November 19, 2007.  AR at 28-29; 284-310.  On March 27, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 13-21.  On December 24, 2008, the Appeals Council denied plaintiff's request for review, making the ALJ's March 27, 2008 ruling the Commissioner's "final decision."  AR at 2-5.  *See* 20 C.F.R. § 416.1481, 422.210.

A timely complaint for judicial review was filed by the plaintiff challenging the Commissioner's decision.  AR at 354.  Based on the stipulation of the parties, the Court ordered the case to be remanded for further administrative proceedings.  AR at 315; 354-55.  As plaintiff had filed a subsequent claim for SSI benefits on April 8, 2009, the Appeals Council vacated the ALJ's decision, and remanded the case with directions for the ALJ to associate the claim files and issue a new decision on the associated claims.  AR at 349-53.

Accordingly, a second hearing took place before the same ALJ on October 26, 2009.  AR at 416-53.  On December 16, 2009, the ALJ again issued an adverse decision based upon a finding that plaintiff could perform a specific job existing in significant numbers in the national

economy.  AR at 315-26.  When the Appeals Council did not assume jurisdiction of the case, the ALJ's ruling became the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the Commissioner's decision.  *See* Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mrs. Cauffman bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On December 16, 2009, the ALJ issued a decision finding the following:

1.     The claimant has not engaged in substantial gainful activity since September 26, 2003, the amended alleged onset date.

2.     The claimant has the following severe impairments: borderline intellectual functioning and learning disorder.

REPORT AND RECOMMENDATION - 5

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  The claimant retains the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: understand, remember, and carry out simple 2 to 3 step instructions, preferably shown by demonstrations (i.e., changing the linens, making the bed, or vacuuming the carpet); would have the average ability to perform sustained work activities (i.e. can maintain attention, concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours per day for 5 days per week or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence; can make judgments on simple work-related decisions, response appropriately to supervision, coworkers, and work situations, and deal with changes all within a stable work setting; cannot deal with the general public like in a sales position, a cashiering job, or a job that requires encountering the general public on a frequent basis (i.e., a job that involves providing information or directions to others), but can have incidental contact with the general public.

5.    The claimant has no past relevant work.

6.    The claimant was born on XXXXX, 1972[2] and was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.    The claimant has not been under a disability, as defined in the Social Security Act, since September 26, 2003, the amended onset date.

AR at 317-26.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ err by concluding that plaintiff's impairments did not
       meet listing 12.05(C) for mental retardation?

2.     Did the ALJ err in his assessment of plaintiff's credibility?

3.     Did the ALJ err in his assessment of the lay witnesses' testimony?

4.     Did the ALJ err in his rejection of the opinions of Alysa Ruddell,
       Ph.D., and David Moore, Ph.D.?

5.     Did the ALJ err in his assessment of plaintiff's RFC?

6.     Did the ALJ err at step five?

Dkt. 15 at 1; Dkt. 16 at 2.

## VII.     DISCUSSION

A.     <u>The ALJ Erred by Concluding that Plaintiff's Impairments Did Not Meet
       Listing 12.05(C) for Mental Retardation</u>

Step three of the sequential evaluation process requires the ALJ to determine whether

plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to

20 C.F.R. Part 404, Subpart P.  20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings describe

specific impairments in each of the body's major systems that are considered "severe enough

to prevent a person from doing most gainful activity."  20 C.F.R. §§ 404.1525, 416.925(a).

Severe impairments must be "permanent or expected to result in death," or must last or be

expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1525(a),

416.925(a).  The ALJ's analysis at step three must rely only on medical evidence and not rely

on age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d); *see also Bates v.

Barnhart*, 222 F.Supp.2d 1252, 1258 (D.Kan. 2002).  To be found disabled at step three,

plaintiff must prove that she meets or equals each of the characteristics of a listed impairment.

20 C.F.R. §§ 404.1525(a), 416.925(a); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

2005).  A claimant who meets or equals a listing is presumed disabled at step three without further inquiry.  20 C.F.R. § 416.920(a)(4)(iii).

Plaintiff argues that the ALJ erred at step three by finding that her impairments did not meet or equal the 12.05(C) listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C), for mental retardation.  *See* Dkt. 15 at 13-14.  The regulations provide that "[t]he structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria . . . [the] impairment meets the listing."  20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.00(A).  The 12.05(C) listing describes mental retardation as a condition characterized by

> significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1 at § 12.05.

Thus, a 12.05(C) listing requires an ALJ to find that the plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22.

1

    1.     *Plaintiff's Verbal IQ Score of 70 Satisfied the 12.05(C) Severity*
           *Requirement*

2

    Plaintiff has taken intelligence tests on several occasions.[3]  AR at 199-200, 318, 321-

3   22, 324-25.  Most recently, plaintiff completed several kinds of testing, including Wechsler

4   Adult Intelligence Scale (WAIS-III) testing, as part of a consultative psychological evaluation

5   completed by David Moore, Ph.D. in 2007.  AR at 199-200.

6       In the discussion portion of his evaluation, Dr. Moore initially noted plaintiff's verbal

7   IQ score as 71.  AR at 199.  Specifically, he stated that "both WAIS and WMS testing resulted

8   in the same outcomes within a minimum expected error," although "[t]he full scale WAIS is

9   not reliable" because of the 20 point difference between plaintiff's verbal IQ of 71 versus her

10  performance IQ of 91.  AR at 199.  Dr. Moore also stated, however, that plaintiff's score on the

11  verbal comprehension index, which is the most reliable measure of general verbal skills,

12  reasoning, and acquired knowledge, was 70.  AR at 199.

13      Most significantly, in the "clinical findings" portion of Dr. Moore's psychological

14  evaluation, he asserted that the WAIS-III IQ test administered to plaintiff on November 5,

15  2007, resulted in a verbal IQ score of 70, performance IQ score of 97, and full scale IQ score

16  of 78.  AR at 200.  Based upon these results, Dr. Moore stated that plaintiff's "verbal IQ tests

17  at Borderline Intellectual Functioning and her Performance IQ is average."  AR at 199.

18      The ALJ's December 16, 2009 decision focused on 12.05(D), rather than 12.05(C).  AR

19  at 318-19.  Although the ALJ analyzed Dr. Moore's November 2007 opinion in his discussion

20  of 12.05(D), the ALJ did not list plaintiff's November 2007 IQ scores.  With respect to listing

21  12.05(C), the ALJ simply stated that

22
            The claimant has borderline intellectual functioning and learning
23          disorders. For instance, on the Wechsler Adult Intelligence Scale
            (WAIS-III) in July 2004, she obtained a verbal score of 73, a
24          performance IQ score of 81, and a full scale IQ score of 75 . . .
            Because the claimant does not have a valid verbal, performance
25

26      [3] The regulations indicate that broad based IQ tests such as the Wechsler series are the
    preferable test method.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c).

or full scale IQ of 60 through 70, neither paragraph "A", "B,"
"C," or "D" of section 12.05 is met.

AR at 318.

Plaintiff argues that her mental impairments meet the severity requirement of listing
12.05(C) because, contrary to the ALJ's statement that her lowest verbal IQ score was 73 in
July 2004, her lowest verbal IQ score was actually 70 in November 2007. *See* Dkt. 15 at 13-
14; AR at 200, 318. Specifically, plaintiff asserts that "Dr. Moore's testing revealed a verbal
IQ score of 70 and the ALJ found that plaintiff has a 'severe' learning disability which
restricted her to special education throughout her education and limited her to 'substantial
learning disabilities in language/math' . . . Since plaintiff has at least one IQ score of 70 and
has a second impairment (learning disorder) which causes more than slight or minimal effect
upon her ability to work as it was found 'severe' by the ALJ, listing section 12.05(C) is met."
Dkt. 15 at 13.

The Commissioner concedes that the ALJ erred by failing to "consider Dr. Moore's
statement that she had a verbal score of 70. . . . " Dkt. 16 at 7. However, the Commissioner
asserts that plaintiff has not satisfied 12.05(C)'s severity requirement because Dr. Moore's
evaluation was internally inconsistent, as "Dr. Moore also stated [in his evaluation] that
Plaintiff had a verbal IQ score of 71 – which is above and therefore outside the range of a valid
verbal, performance, or full scale IQ score of 60 through 70 required by Listing 12.05(C)." *Id.*
at 6. The Commissioner states that as a result of this conflict, the ALJ's "error in this respect
should be considered harmless error." *Id.* at 7.

The Court does not find the Commissioner's arguments persuasive. Courts in the Ninth
Circuit have held that where multiple or conflicting IQ scores are available, the operative score
for purposes of determining whether a claimant's impairments meet or equal the 12.05 listing
is the lowest "valid verbal, performance, or full scale IQ" score the claimant has received. *See*
*Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (providing that where a claimant took IQ
tests in both 1982 and 1983, higher scores obtained in 1983 did not render lower scores

REPORT AND RECOMMENDATION - 10

obtained in 1982 invalid for purposes of listing 12.05(C)); *Ray v. Chater*, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (providing that "it can be inferred that when multiple I.Q. scores are available the Regulations prefer the lowest score."). *See also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."). As a result, plaintiff's verbal IQ score of 70, as set forth in Dr. Moore's clinical findings, constitutes her operative IQ score for purposes of listing 12.05. The ALJ's failure to discuss this score in conjunction with listing 12.05 was therefore in error. AR at 318.

Furthermore, the Court notes that the ALJ did not question the validity of the results of the November 2007 psychological test administered by Dr. Moore. To the contrary, the ALJ expressly "accord[ed] some weight to the psychological tests administered by Dr. Moore," although he afforded "minimal weight to his conclusions" as to plaintiff's resulting limitations on the grounds that they were "not supported by the psychological test results." AR at 318-19, 324. For example, the ALJ relied upon the November 2007 WAIS-III test results to support his assessment of plaintiff's RFC, and he noted that plaintiff's "performance IQ score, which was in the average range, was higher than her verbal IQ score, which was in the borderline range." AR at 321.

The regulations require the ALJ to consider plaintiff's lowest valid IQ result in conjunction with 12.05, and plaintiff's verbal IQ score of 70 falls within the range set forth by listing 12.05(C). 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c). As the ALJ has not provided any reason for rejecting this score, plaintiff has satisfied the first prong of 12.05(C)'s severity requirement. *Id.* at § 12.05(C).[4]

---

[4] It is therefore unnecessary to consider plaintiff's alternative argument that she "'equals' the listing if the Court determines that her lowest IQ score is 71." Dkt. 15 at 14.

REPORT AND RECOMMENDATION - 11

1

2.    *Plaintiff Suffered from "An Additional and Significant Work-Related*
      *Limitation of Function"*

2          An impairment satisfies the second prong of section 12.05(C), and imposes "an

3    additional and significant work-related limitation of function," when its impact on a claimant's

4    ability to perform basic work activities is more than slight or minimal.  *Fanning*, 827 F.2d at

5    633 (internal citations omitted).  A step two finding of a severe impairment by the ALJ

6    therefore satisfies this test.  *Id.* at n.3 (emphasizing, however, that a specific severity finding is

7    not required to satisfy this standard).  *See also Frazier v. Astrue*, 2010 WL 3910331,*5 (E.D.

8    Wash. 2010) ("[U]nder *Fanning* and the Regulations, the ALJ's step two finding that

9    plaintiff's depressive disorder is severe, satisfies the second prong of Listing 12.05(C). . . .").

10         As discussed above, plaintiff argues that she has satisfied the second prong of

11   12.05(C)'s severity requirement because she has "a second impairment (learning disorder)

12   which causes more than slight or minimal effect upon her ability to work as it was found

13   'severe' by the ALJ. . . ." Dkt. 15 at 13.  Plaintiff is correct.  Here, the ALJ found that in

14   addition to plaintiff's borderline intellectual functioning, plaintiff's learning disorder

15   constituted a severe mental impairment at step two of the sequential evaluation process.  AR at

16   317.  *See* 20 C.F.R. § 416.920(c) (providing that in order to be considered "severe," an

17   impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic

18   work activities. . . .").  The Commissioner does not dispute that plaintiff's learning disorder

19   constitutes an "additional and significant work-related limitation of function" that satisfies the

20   second prong of 12.05(C).  *See* Dkt. 16 at 4-7.  Thus, plaintiff has satisfied both prongs of

21   12.05(C)'s severity requirement.

22
            3.    *Plaintiff had Significant Subaverage General Intellectual Functioning*
23                *and Deficits of Adaptive Functioning that Manifested Before Age 22*

24         In order to satisfy the diagnostic description of "mental retardation" in the introductory

25   paragraph of listing 12.05, there must be evidence of "significantly subaverage general

26   intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Several circuits, including the Ninth Circuit, have found IQ to be an important indicator of subaverage intellectual functioning. Additionally, when determining whether claimants demonstrate deficits in adaptive functioning, courts look to a variety of factors that focus on the claimant's ability to lead an independent life.

> a.   Plaintiff's IQ Demonstrates Subaverage Intellectual Functioning Manifesting Before the Age of 22

In *Hernandez v. Astrue*, the Ninth Circuit Court of Appeals recently indicated that a plaintiff's post-developmental IQ scores can support an inference that subaverage functioning began during the development period. Specifically, the court held that pursuant to the regulations, "evidence *from* the developmental period is not required in order to establish that the impairment began before the end of the developmental period; rather, the agency may use its judgment when current evidence allows it to infer when the impairment began." *Hernandez v. Astrue*, 380 Fed.Appx. 699, 700 (9th Cir. 2010) (citing the Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 70746-01, 50753 (August 21, 2000) (interpreting Listing 12.05 and explaining that the regulations "permit us to use judgment, based on current evidence, to infer when the impairment began."). In addition, "mental retardation could be found at step three if the evidence suggests an early onset of low mental functioning, even if no one tested Plaintiff's intelligence until adulthood." *Id*. at 700-01. In addition to a claimant's IQ, the *Hernandez* court cited evidence that a claimant "repeated fourth grade, received poor grades in school, and did not attend high school" as evidence that an impairment began during the developmental period. *Id*. at 701.

Several other circuits have also found that plaintiffs create a rebuttable presumption that their developmental IQ was the same as their current IQ when they present a valid IQ score from their post-developmental period. *See e.g.*, *Branham v. Heckler*, 775 F.2d 1271,

REPORT AND RECOMMENDATION - 13

1274 (4th Cir. 1985) (absent contrary evidence, an IQ test taken after the insured period correctly reflects claimant's IQ during the insured period); *accord Luckey v. U.S. Dep. of Health & Human Srvs.*, 890 F.2d 666, 668-69 (4th Cir. 1989) (courts should assume IQ remains constant and that an absence of an IQ test during the developmental period does not preclude a finding of retardation); *see also Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (per curiam) (IQ test taken after expiration of insured period sufficient to establish IQ during insured period); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (presuming that a person's IQ remain stable over time in the absence of any change in intellectual functioning); *but see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (upholding ALJ's finding that claimant was not retarded, in part because plaintiff's IQ testing was not contemporaneous with her developmental period); *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003) (declining to create such a presumption). The Eleventh Circuit has gone further to find that claimants presumptively meet the 12.05(C) disability requirements when they present a valid IQ score and evidence of an additional impairment. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

Courts that use evidence of mental retardation from the post-developmental period to raise a rebuttable presumption that the condition existed during the developmental period implicitly base their decisions on the medical fact that, absent some traumatic event, intelligence remains fairly constant throughout one's life. *See e.g.*, *Hodges*, 276 F.3d at 1268-69. For example, the Ninth Circuit in *Hernandez* asserted that the absence of evidence that a plaintiff's cognitive functioning had deteriorated over time supported the proposition that a claimant manifested onset of her mental impairment before age 22. *See Hernandez*, 380 Fed.Appx. at 700.

Here, plaintiff's IQ score indicates that she was presumptively mentally retarded during her developmental years. The Wechsler standardized IQ test, administered many years after the age of 22, scored her verbal IQ at 70. AR at 200. Moreover, the ALJ did not find that

plaintiff's cognitive functioning had deteriorated over time.  AR at 315-26.  These facts constitute substantial evidence that plaintiff manifested "evidence of significantly subaverage intellectual functioning" during her developmental period.[5]

> b.   Plaintiff Demonstrated Deficits in Adaptive Functioning

When determining whether a claimant demonstrates "deficits in adaptive functioning," courts consider a variety of factors that focus on the claimant's ability to lead an independent life.  As mentioned above, the *Hernandez* court cited a claimant's poor academic performance as evidence that an impairment began during the developmental period.  *Hernandez*, 380 Fed.Appx. at 701.  *See also Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D. Wash. 1995) (holding that a claimant's participation in special education classes can be indicative of deficits in adaptive functioning).  Similarly, the Third and Eighth Circuits have found that a claimant's participation in special education, poor academic performance, and low-skilled work history imply evidence of deficits in adaptive functioning during the developmental period.  *See Markle*, 324 F.3d at 189 (remanding for further development of these factors); *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007).  These factors are consistent with the Commissioner's comments on the listing requirements for 12.05(C), which indicates that 12.05(C) accommodates the American Psychiatric Association's analysis of mental retardation, which looks to an individual's ability to function academically, care for themselves, and live independently.  20 C.F.R. Pt. 404.

Plaintiff attended special education classes in every subject from grades one through twelve, and was never mainstreamed.  AR at 199, 213, 424-25.  The ALJ found that plaintiff has "moderate difficulties" in social functioning, as her mental impairments "may limit her ability to deal with people."  AR at 319.  Plaintiff cannot drive a car, and has never obtained a driver's license.  AR at 424.  Plaintiff has also been unable to hold a job or perform in the

---

[5] Notably, the American Psychiatric Association also defines "[s]ignificantly subaverage intellectual functioning" as an "IQ of about 70 or below."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders (DSM IV )* 39 (4th ed. 1994).

workplace. After plaintiff graduated from high school, she continued to live with her parents and did not gain a vocation. AR at 199. For example, the ALJ found that plaintiff has no past relevant work, because her work experience includes employment for only two weeks as a prep cook at Jack in the Box in 1997, and two weeks as a recycling sorter in 1999. AR at 165, 322, 426-31. These facts constitute substantial evidence of plaintiff's adaptive functioning deficits, the final requirement of listing 12.05.

### 4. *A Diagnosis of Mental Retardation is Not Required by Listing 12.05*

The Commissioner argues that plaintiff does not meet listing 12.05(C) because plaintiff has not been formally diagnosed with mental retardation, and "a diagnosis of mental retardation is a prerequisite to meeting or equaling Listing 12.05, regardless of the severity shown by IQ scores for part C of Listing 12.05." Dkt. 16 at 4. However, a claimant must only satisfy three elements in order to meet listing 12.05(C): (1) a single valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22. As discussed above, plaintiff has satisfied these elements.

Furthermore, recent authority has specifically held that a diagnosis of mental retardation is not required to meet listing 12.05. *See Frazier v. Astrue*, 2010 WL 3910331, *4 (E.D. Wash. 2010) (holding that "[t]here is no requirement for a formal diagnosis of 'mental retardation'" to meet listing 12.05(C)). *See also Christner*, 498 F.3d 790, 793 (8th Cir. 2007) ("[W]e have specifically held that a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05. Thus, it is clear that claimants need only meet the listing requirements stated in section 12.05."); *Lewis v. Astrue*, 2008 WL 191415, *5-7 (N.D. Cal. 2008) (holding that "the ALJ erred by holding that claimant had to make a showing of mental retardation beyond that which is required by Listing 12.05" by also requiring evidence of a diagnosis of mental retardation).

REPORT AND RECOMMENDATION - 16

The lack of a diagnosis of mental retardation, therefore, has no bearing on whether plaintiff's impairments meet listing 12.05(C).  Together, plaintiff's verbal IQ score of 70, educational history, social functioning, and work history demonstrate that she meets the diagnostic requirements of the 12.05(C) listing for mental retardation. The ALJ erred when he determined that plaintiff was not disabled.

### 5.    Remand for Award of Benefits is the Appropriate Relief

It is unnecessary to address plaintiff's remaining assignments of error.  Remand is required.  As noted above, a remand for award of benefits is appropriate when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant dsiabled if he considered the claimant's evidence.  *See Massanari*, 298 F.3d at 1076-77.  Here, the ALJ failed to mention, let alone provide clear and convincing evidence, to discount plaintiff's November 2007 IQ score of 70.  Although the ALJ did not agree with Dr. Moore's opinions, the ALJ expressly credited the results of Dr. Moore's psychological tests as true.  As a result, there are no outstanding issues that must be resolved, and the ALJ would be required to find plaintiff disabled because her impairments meet listing 12.05(C).  This case was filed over five years ago, and ALJ Adams has already conducted two administrative hearings to consider plaintiff's claims. There is nothing to be gained by sending this matter back for another hearing.  Accordingly, the undersigned recommends that this matter be remanded with instructions to award benefits.

///

///

///

///

///

REPORT AND RECOMMENDATION - 17

1

## VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3   REMANDED to the Commissioner for the award of SSI benefits.  A proposed order

4   accompanies this Report and Recommendation.

5          DATED this 12th  day of November, 2010.

6

7   _____
    JAMES P. DONOHUE
8   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 18